270 N.J. Super. 318 (1994)
637 A.2d 195
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES H. WILLIAMSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1993.
Decided February 3, 1994.
*319 Before Judges PRESSLER, BROCHIN and KLEINER.
Monaghan, Rem & Zeller, attorneys for appellant (Joseph A. Raia, on the brief).
John J. O'Reilly, Warren County Prosecutor, attorney for respondent (Stephanie P. Tettemer, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
After the denial of a motion to suppress evidence, defendant Charles H. Williamson pleaded guilty to possession of cocaine with intent to distribute it in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2). He was sentenced to seven years' imprisonment. He appeals to this court solely on the ground that the warrantless search of his vehicle was illegal because the State Trooper who stopped him did not have a sufficient basis for doing so.
According to the Trooper, he was authorized to make the stop because he observed a violation of N.J.S.A. 39:4-126. That statute provides:
No person shall ... turn a vehicle from a direct course or move right or left upon a roadway ... unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner *320 hereinafter provided in the event any other traffic may be affected by such movement.

A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.... [Emphasis added.]
The State Trooper testified that at about 1:00 p.m., while he was driving a police vehicle in the left lane of Interstate 80, a divided highway which had three lanes of travel in each direction, he observed defendant's vehicle several car lengths ahead, in the center lane of the highway. According to the Trooper, defendant moved his vehicle into the right lane without signalling.[1] No testimony was offered that there were any motor vehicles anywhere in the vicinity other than the State Trooper's and the defendant's cars.
On the basis of this record, defendant argues that the State did not prove any justification for stopping him. He contends that since there was no showing that any other vehicle was "affected" by his moving into the right lane, the State failed to establish that the State Trooper had probable cause to believe that he had violated N.J.S.A. 39:4-126.
There are no pertinent reported New Jersey cases construing N.J.S.A. 39:4-126. However, decisions in other jurisdictions support *321 defendant's position. In both Hall v. Texas, 488 S.W.2d 788 (Tex. Crim. App. 1973) and Willett v. Texas, 454 S.W.2d 398 (Tex. Crim. App. 1970), the defendants were convicted for possession of contraband, a pistol in the Hall case and marijuana in the Willett case, after their vehicles had been stopped for turning without signalling first. In both cases the defendants appealed only on the ground that the searches which disclosed the contraband were invalid because the initial stops were illegal. The Texas statute which required a motorist to signal before turning was substantially identical to ours:
No person shall turn a vehicle at an intersection . .. unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement. [Emphasis added.]
In each of the cases, the arresting officer's vehicle was in back of the defendant's as the defendant made a turn without signalling. In Hall, when the defendant turned left at an intersection, the arresting officer saw defendant's vehicle turn; the officer slowed down momentarily, but defendant's turning did not interfere with him; the officer did not recall seeing any approaching cars and he did not remember how much traffic there was. In Willett, the defendant turned right into a driveway; according to the court's opinion, there was no evidence that the defendant's turn affected the movement of the police officer's vehicle which was the only vehicle present in the area. In both cases, the courts found that the State had not proved a violation of the statute. The arrests and the searches were held illegal. Evidence and testimony about the evidence disclosed by the searches were suppressed.
The same issue, the legality of searches incident to arrests for turning a vehicle without signaling first, came before the Texas Criminal Appeals Court again in Praska v. Texas, 557 S.W.2d 83 (Tex. Crim. App. 1977) and Beck v. Texas, 547 S.W.2d 266 (Tex. Crim. App. 1976). In both of these cases, the defendants challenged their arrests for illegal turns on the ground that the State had not proved that "any other traffic may be affected by such movement." In these two cases, the defendants lost. The material *322 distinction was that in the interim between Hall and Beck, the Texas legislature had amended the relevant statute by deleting the clause, "in the event any other traffic may be affected by such movement[,]" and by making the use of turn signals mandatory, regardless of traffic conditions. Cf. Minnesota v. Bissonette, 445 N.W.2d 843 (Minn. Ct. App. 1989) (under amended statute, use of turn signal was required regardless of whether other traffic would be affected). See also New York v. Lyons, 7 N.Y.2d 36, 194 N.Y.S.2d 491, 163 N.E.2d 321 (1959) (conviction for violation of statute substantially identical to New Jersey's upheld because proof that other traffic might be affected was adequate); Wisconsin v. Bundy, 157 Wis.2d 815, 461 N.W.2d 449 (Wis. Ct. App. 1990) (conviction for violation of statute similar to, but not identical with New Jersey's upheld because proof that other traffic might be affected was adequate).
The language of our statute and the decisions of other jurisdictions which we have cited persuade us that to sustain the present search as incident to a legal motor vehicle stop, the State was required to prove that defendant's moving from the center to the right lane of Route 80 "affected" other traffic within the meaning of N.J.S.A. 39:4-126 and that the State failed to do so. However, the proceeding in which the State's proofs were insufficient was a preliminary hearing. Furthermore, the defendant did not move to dismiss at the hearing on the ground that the State did not prove that other traffic had been affected. If defendant had made that argument at the close of the hearing, the court would have had the discretion to permit the State to amplify its proofs. Perhaps the missing evidence could have been supplied. Under the circumstances, we remand the matter to the trial court for a new hearing on defendant's motion to suppress evidence. See State v. Madison, 109 N.J. 223, 245, 536 A.2d 254 (1988) (case remanded to trial court for State to demonstrate whether identification of defendant had independent source; if State established independent source, conviction would be affirmed); State v. Kelly, 61 N.J. 283, 294, 294 A.2d 41 (1972) (case remanded to trial court *323 for hearing on issue whether defendant's statement, which had been admitted at trial, was voluntary and therefore properly admissible; if State established defendant's statement was voluntary, conviction would be affirmed). If the State supplies the necessary proof, the judgment of conviction is affirmed. If the State fails to do so, the order denying defendant's motion to suppress evidence is reversed, the judgment of conviction is vacated, and a judgment of acquittal should be entered.
The case is remanded to the Law Division for proceedings consistent with this opinion.
NOTES
[1] The Trooper's testimony was as follows:

Q.... Can you tell the court how you came first into contact with Mr. Williamson?
A. I was traveling westbound on Interstate 80 in Knowlton Township. I was in the left lane and I observed a vehicle in front of us in the center lane, which I later found out was operated by Mr. Williamson.
....
Q. Now did you have occasion while you were observing that vehicle to observe any motor vehicle violations?
A. Yes, I did.
Q. And what motor vehicle violation did you observe?
A. I observed the vehicle without signal and warning just change lanes from the center lane over into the right lane. Again this is within a few car lengths ahead of me, I was in the left lane.
Q. Now what time of day did this take place?
A. Around 1:00 in the afternoon, 1:20.