**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2892-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL A. TROTMAN,

    Defendant-Appellant.

_____

Submitted October 7, 2025 – Decided October 28, 2025

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 19-01-0130 and Accusation No. 21-01-0033.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (William Kyle Meighan, Supervising Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael A. Trotman appeals from the July 21, 2023 trial court order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant contends an evidentiary hearing is warranted because he made a prima facie showing of ineffective assistance of counsel (IAC) based on his plea counsels' failure to file motions to suppress. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

On May 30, 2018, at 7:45 p.m., Officer Peter Manco, working with the Manchester Police Division's Narcotics Enforcement Team, observed defendant driving his vehicle on a county road "with all but its windshield tinted."[1] Manco followed defendant as they approached a red light at an intersection and observed him exit the roadway into a private convenience store parking lot, travel "around the rear of the building," and directly exit onto another roadway. Manco continued surveilling defendant's vehicle and requested police backup. He stopped defendant's vehicle based on defendant's "improperly tinted windows," N.J.S.A. 39:3-74, and "utilizing public property to avoid" the traffic signal, N.J.S.A. 39:4-66.2.

---

[1] It is undisputed that "defendant relied upon the police reports to support his claims" before the PCR court.

A-2892-23

Manco approached defendant's passenger-side window and smelled a "strong odor of raw marijuana emanating from the passenger compartment."[2] He also observed "a white powdery residue" on defendant's hands and a "torn clear plastic vacuum[-]seal[ed] type bag on the front passenger seat," which he recognized as common packaging for marijuana distribution. Manco asked defendant to exit his vehicle after receiving defendant's credentials. Defendant complied, stating, "Yeah, I was smoking, I know, that[ is] all it was," which Manco understood to be in response to his detecting the strong odor of marijuana emanating from the vehicle. When Manco advised defendant that he saw the vacuum-sealed bag, defendant replied, "Go [a]head[,] search it."

Manco read defendant his Miranda[3] rights, which defendant waived. During an initial search of the vehicle, Manco discovered a hidden compartment and "a large quantity . . . of crack cocaine." He then arrested defendant. Manco

---

[2] We note that under the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), L. 2021, c. 16 (codified at N.J.S.A. 24:6I-31 to -56), which became effective on February 22, 2021, an "odor of cannabis or burnt cannabis" cannot create a "reasonable articulable suspicion of a crime" under most circumstances. N.J.S.A. 2C:35-10c(a). CREAMMA does not apply here, however, "[b]ecause that limitation is prospective," and both searches took place before its effective date. State v. Cambrelen, 473 N.J. Super. 70, 76 n.6 (App. Div. 2022).

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2892-23

continued his search of the vehicle, uncovering:  plastic bags containing marijuana and cocaine; "a $100 bill folded to contain marijuana"; oxycodone pills; "a plastic baby bottle containing" suspected liquid codeine; "a portable . . . electronic scale . . . covered in white powdery residue"; two cellular telephones in addition to the one defendant had on his person; and $1,393 in cash.  Manco observed one of the phones in the vehicle "beep[] numerous times" and display incoming text messages "consistent with people requesting to purchase [controlled dangerous substances (CDS)]."

On January 23, 2019, an Ocean County grand jury indicted defendant with:  third-degree possession of CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count one); first-degree possession of CDS (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(1) (count two); third-degree possession of CDS (oxycodone), N.J.S.A. 2C:35-10(a)(1) (count three); third-degree possession of CDS (oxycodone) with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(5) (count four); third-degree possession of CDS (codeine), N.J.S.A. 2C:35-10(a)(1) (count five); and fourth-degree possession of CDS (marijuana) with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(12) (count six).

On December 13, defendant entered a negotiated plea agreement with the

State, pleading guilty to count two of the indictment.[4] On the plea form, defendant indicated that he had no questions concerning his plea and was satisfied with his plea counsel's performance. Further, defendant acknowledged under Question 4(d) of the plea form that had he filed a motion to suppress physical evidence under Rule 3:5-7(d) that the court had denied, he was "not waiving [his] right to appeal." The State agreed to recommend a twelve-year sentence with a five-year period of parole ineligibility. Defendant was released pending sentencing.

On March 4, 2020, at 8:00 a.m., Detective Dominick Puccio and other Brick Township Police Department officers stopped defendant's vehicle after Puccio observed defendant: "ash a cigarette out of the window" multiple times; travel "at a high rate of speed"; and repeatedly drift over the fog line. The officers approached defendant's vehicle and "detected a strong odor of marijuana." Puccio and Detective Matthew Firneno requested defendant to exit the vehicle, and defendant complied. Firneno observed defendant "reach into the rear of his pants and . . . attempt[] to conceal a small item." Detective Sergeant Lawrence Petrola searched defendant and "felt a small package

---

[4] We were not provided a transcript of the court's 2019 plea hearing. See R. 3:9-2; R. 3:9-3(b).

containing a rock substance," which "fell down [defendant's] leg and onto the blacktop." Puccio retrieved the item and identified it as a plastic bag containing suspected crack-cocaine. The officers arrested defendant and his two passengers that admitted to smoking marijuana with defendant. A search of defendant's vehicle revealed: small amounts of marijuana; clear plastic bags commonly used for drug distribution; and a "multi[-]colored cellular phone." The same day, defendant was charged with: third-degree possession of CDS (cocaine), N.J.S.A. 2C:35-10(a)(1); and second-degree possession of CDS (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(b)(2). Additionally, defendant was issued a summons for the disorderly-persons offenses of fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(4), and possession of drug paraphernalia, N.J.S.A. 2C:36-2. Defendant was also issued traffic violations, including for: careless driving, N.J.S.A. 39:4-97; failure to maintain lane, N.J.S.A. 39:4-88(b); operation of a motor vehicle while in possession of CDS, N.J.S.A. 39:4-49.1; and littering or throwing debris from his vehicle N.J.S.A. 39:4-64.

On January 11, 2021, defendant pleaded under Accusation No. 21-01-0033 to one count of second-degree possession of CDS (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(2). Defendant entered into a revised plea agreement, vacating his December 2019 plea. Under the new plea agreement,

6

the State agreed to recommend a: fifteen-year prison term with a five-year period of parole ineligibility[5] on the indicted count two; and concurrent eight-year prison term on the accusation charge.

During the court's plea colloquy, where another attorney from the same law firm represented defendant, defendant acknowledged: he understood his rights; he was voluntarily pleading guilty; and he had truthfully answered all of the questions on the plea form. Moreover, defendant confirmed he: reviewed the plea form with plea counsel; had "sufficient time to discuss all of these issues with" plea counsel; had no questions, as plea counsel satisfactorily answered them; and was "satisfied with the [legal] services rendered." Defendant again responded to Question 4(d), acknowledging that he had a right to appeal the court's denial of any motion filed to suppress physical evidence.

On May 7, after hearing argument, the court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and the seriousness of the offenses); and nine,

---

[5] At the sentencing hearing, the State waived the five-year parole ineligibility period agreement provision pursuant to an Attorney General Administrative Directive. See Off. of the Att'y Gen., Admin. Directive No. 2021-4, Directive Revising Statewide Guidelines Concerning The Waiver Of Mandatory Minimum Sentences In Non-Violent Drug Cases Pursuant To N.J.S.A. 2C:35-12 (Apr. 19, 2021).

N.J.S.A. 2C:44-1(a)(9) (need to deter). It also found mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (defendant's imprisonment would entail excessive hardship to himself or his dependent). After weighing the factors, the court sentenced defendant in accordance with the plea agreement.

On July 28, 2022, defendant filed a self-represented PCR petition, arguing both plea counsel were ineffective because they filed no motions to suppress, which were "vital to [his] [d]efense," and "misadvised" him.[6] On February 13, 2023, defendant filed a supplemental certification in support of his PCR petition. On July 21, after argument where PCR counsel represented defendant, the PCR court issued an order accompanied by a fourteen-page written opinion denying defendant's petition because defendant failed to satisfy the two-prong Strickland test, as adopted by our Supreme Court in Fritz.[7] Specifically, as to defendant's IAC claim that both plea counsel failed to "advise [defendant] appropriately," the court explained the 2021 plea transcript and plea form demonstrated

---

[6] We note it appears from the plea forms and plea transcript that multiple attorneys from the same law firm represented defendant when he entered the plea in 2021. Because defendant argues that "plea counsel should have filed two motions to suppress the evidence obtained from two illegal investigatory detentions" and does not distinguish between plea counsels' representation, we widely view his IAC argument as to each plea counsel's representation.

[7] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

defendant knowingly and voluntarily pleaded guilty, and he failed to show plea counsel did not properly advise him of his rights. Further, the court found no factual support indicated defendant's Fourth Amendment rights were violated or that defendant "would be successful on the merits" on any motions to suppress. The court concluded defendant "failed to establish that the deficiencies alleged materially contributed to the outcome in this case."

On appeal, defendant argues the following points:

POINT I

THIS COURT SHOULD REVERSE THE PCR COURT'S DECISION TO DENY THE DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON THE ISSUE OF WHETHER THE DEFENDANT'S ATTORNEY SHOULD HAVE FILED A MOTION TO SUPPRESS THE EVIDENCE UNDERLYING THE CHARGES IN INDICTMENT NUMBER 19-01-00130-I.

POINT II

THIS COURT SHOULD REVERSE THE PCR COURT'S DECISION TO DENY THE DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON THE ISSUE OF WHETHER THE DEFENDANT'S ATTORNEY SHOULD HAVE FILED A MOTION TO SUPPRESS THE EVIDENCE UNDERLYING THE CHARGE IN ACCUSATION NUMBER 21-01-00033-A.

When a PCR court does not hold an evidentiary hearing, our standard of review is de novo as to both the judge's factual inferences drawn from the record and the judge's legal conclusions. State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020). A petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

When petitioning for PCR, the defendant must establish, "by a preponderance of the credible evidence," entitlement to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)). "'To sustain that burden, specific facts' which 'would provide the court with an adequate basis on which to rest its decision' must be articulated." State v. Hand, 480 N.J. Super. 15, 26 (App. Div. 2024) (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)).

To succeed on an ineffective assistance of counsel claim, a defendant must satisfy both prongs of the Strickland test. "First, the defendant must show that

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The PCR court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Moreover, courts must "make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" State v. Hernandez-Peralta, 261 N.J. 231, 251 (2025) (quoting State v. Pierre, 223 N.J. 560, 579 (2015)).

"In a challenge to a conviction arising from a guilty plea, the petitioner may satisfy the prejudice prong by showing 'a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  State v. O'Donnell, 435 N.J. Super. 351, 369-70 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  "In the PCR context, to obtain relief from a conviction following a plea, 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"  Id. at 371 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

"Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome."  State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  This is because "[s]olemn declarations in open court carry a strong presumption of verity."  Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74).

### III.

Defendant contends the PCR court erred by not holding an evidentiary hearing even though he made a prima facie showing that plea counsel were ineffective for failing to consult with him and file motions to suppress the evidence seized from his motor vehicle stops.  He argues the officers lacked a

12

reasonable and articulable suspicion for the May 30, 2018 stop, which was based on his tinted windows and traffic signal avoidance. Defendant also argues the officers lacked a reasonable and articulable suspicion for the March 4, 2020 stop, which was based on his littering cigarette ashes, speeding, and erratic driving. He asserts the officers' reasons were pretextual and that he "would not have pled guilty" if plea counsel had filed the "meritorious motions to suppress evidence." After our de novo review of the record, we discern no merit in defendant's contentions.

We first address defendant's argument that an evidentiary hearing was warranted based on his assertions that plea counsel were ineffective for not "review[ing] the discovery with" him because he wanted "to file . . . motion[s] to suppress." Defendant offers no material facts supporting his assertions that plea counsel failed to discuss discovery and filing motions to suppress. To the contrary, we observe defendant: asked no questions at his plea and sentencing hearings about filing motions; indicated he was satisfied with plea counsels' representation and the plea offer; and did not seek more time to speak with plea counsel. In his separate plea forms, defendant acknowledged the right to appeal the denial of any motion to suppress filed. Further, during his plea colloquy,

A-2892-23

defendant confirmed plea counsel went over the plea forms "at length" with him, and advised that he had no questions.

As noted by the PCR court, defendant's statements that plea counsel misinformed him and failed to explain the "complexities" surrounding filing a motion are unsupported "blanket allegations with no specificity or details." See R. 3:22-10(e)(2) (stating the "court shall not grant an evidentiary hearing" if the "hearing will not aid the court's analysis of the defendant's entitlement to post-conviction relief" or "the defendant's allegations are too vague, conclusory or speculative"). Thus, we conclude defendant's claim that an evidentiary hearing is warranted to address his IAC allegations regarding plea counsels' failure to apprise him about discovery and filing motions to suppress lack merit.

We next address defendant's argument that he made a prima facie showing that plea counsels' failure to file motions to suppress was IAC because the officers lacked a reasonable and articulable suspicion to support either stop. Well-settled principles guide our review. "[W]hen counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the Strickland test but also must prove that his [or her] Fourth Amendment claim is meritorious." State v. Goodwin, 173 N.J. 583, 597 (2002) (second alteration in original) (quoting State v. Fisher, 156 N.J. 494, 501 (1998)). "The Fourth

Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Nelson, 237 N.J. 540, 552 (2019) (quoting State v. Dunbar, 229 N.J. 521, 532 (2017)).

"To justify a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." State v. Carter, 247 N.J. 488, 524 (2021) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)). "To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion." State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)). "In determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances—the whole picture.'" Nelson, 237 N.J. at 554 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). Notably, "[t]he State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense."

A-2892-23

State v. Boone, 479 N.J. Super. 193, 208 (App. Div. 2024) (quoting State v. Williamson, 138 N.J. 302, 304 (1994)). "It is not [IAC] for defense counsel not to file a meritless motion." State v. Balbosa, 481 N.J. Super. 497, 520 (App. Div. 2025) (quoting State v. O'Neal, 190 N.J. 601, 619 (2007)).

Defendant contends that Manco lacked a reasonable and articulable suspicion that he operated his vehicle on public property to purposely "avoid[] a traffic control signal or sign" in violation of N.J.S.A. 39:4-66.2. It is undisputed that Manco stopped defendant after he observed defendant exit the roadway, enter private property, and use the property to exit onto a different roadway, avoiding a red light. Manco's investigation report memorialized that he also "suspected" defendant "had observed [his] patrol unit . . . and had pulled into the parking lot to avoid being stopped."

After stopping defendant, Manco asked him where he was coming from, and defendant "explained [that] he had just drove through the parking lot to avoid the red traffic signal." Thus, not only did defendant irrefutably admit to violating N.J.S.A. 39:4-66.2, but Manco's report memorialized that he had conducted the stop because defendant "utiliz[ed] private property to avoid the . . . traffic control device." There is no likelihood that defendant would have been successful had his plea counsel filed motions to suppress because the

16

record amply supports that Manco had a reasonable and articulable suspicion to stop defendant's vehicle and defendant does not contest the validity of the subsequent search.

Based on our determination that Manco had a reasonable and articulable suspicion for the motor vehicle stop, we need not address defendant's further contention that Manco lacked a reasonable and articulable suspicion based on defendant's tinted window violation under N.J.S.A. 39:3-74.[8]  See State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) (stating "[a] motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act").

Finally, contrary to defendant's contention, he has failed to make an initial showing that the officers lacked a reasonable and articulable suspicion to stop his vehicle on March 4, 2020.  Relevantly, it is uncontroverted that Puccio observed defendant driving carelessly at a high rate of speed, N.J.S.A. 39:4-97,

---

[8]  We note that because Manco had sufficient cause to stop the vehicle under N.J.S.A. 39:4-66.2, an evidentiary hearing was unnecessary to address our Supreme Court's decision in State v. Smith, which held that the term "non-transparent" in N.J.S.A. 39:3-74 "means that reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car."  251 N.J. 244, 265 (2022).

and failing to maintain his lane by driving over the fog line, N.J.S.A. 39:4-88(b). Again, we note a reasonable suspicion of one motor vehicle violation alone was sufficient for officers to stop defendant's vehicle. Id. at 370. As Puccio charged defendant with careless driving, there is no merit to defendant's argument that Puccio lacked sufficient cause to stop defendant because "the phrase 'high rate of speed' [wa]s not enough to form a reasonable suspicion to stop [his] vehicle without reference to a posted speed limit." Further, there is no support for defendant's contention that there "are reasons to doubt the veracity" of Puccio's recorded observations of defendant's motor vehicle violations. To establish a prima facie claim of IAC warranting an evidentiary hearing, it is clear "a petitioner must do more than make bald assertions," but instead must "allege facts sufficient to demonstrate counsel's alleged substandard performance." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170).

Our review of the record convinces us that defendant has failed to make a prima facie showing that plea counsels' failure to file suppression motions was IAC as defendant has not demonstrated a material dispute that the officers' actions were not objectively reasonable, and their observed motor vehicle observations were pretextual. Further, the record supports the conclusion that defendant failed to make the requisite showing that trial counsel was deficient

18

and he suffered prejudice. To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

19

A-2892-23